IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

ANTHONY HENRY AMOFA          )
                             )
    v.                       )   NO: 3:18-0105
                             )
YATES SERVICES, LLC.         )


TO:   Honorable Aleta A. Trauger, District Judge


# REPORT AND RECOMMENDATION

By Order entered May 21, 2018 (Docket Entry No. 10), the Court referred this case to the Magistrate Judge for case management, decision on all pretrial, nondispositive motions and report and recommendation on all dispositive motions under 28 U.S.C. § 636(b)(1), and to conduct any necessary proceedings under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.

Presently pending before the Court is the motion for summary judgment filed by Defendant Yates Services, LLC (Docket Entry No. 23), to which Plaintiff has responded in opposition. For the reasons set out below, the undersigned respectfully recommends that the motion for summary judgment be granted and this action be dismissed as to all claims.

## I. BACKGROUND

Anthony Amofa ("Plaintiff") is a former employee of Yates Services, LLC ("Yates" or "Defendant"), a business that supplies workers to Nissan North America, Inc. ("Nissan"), at Nissan's automobile manufacturing plant in Smyrna, Tennessee ("the Plant"). In this *pro se* and *in forma pauperis* lawsuit, Plaintiff alleges that he was discriminated against on the basis of a disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, when Defendant failed to accommodate his disability in 2018. He also brings a claim under state law,

alleging that he was terminated from his employment as an act of retaliation against him because he successfully pursued a workers' compensation claim against Defendant. *See* Complaint (Docket Entry No. 1) and Amended Complaint (Docket Entry No. 9).[1] Upon Defendant's filing of an answer and amended answer, *see* Docket Entry Nos. 15 and 20, a scheduling order was entered, setting a period for pre-trial activity and discovery. *See* Docket Entry No. 17.

Plaintiff's lawsuit centers around how he was treated by Defendant after suffering injuries to his back and right shoulder during 2016. In early 2016, Plaintiff injured his back while working on the trim and chassis assembly line at the Plant. Although Plaintiff was treated on several occasions during February and March 2016 by Premise Health, one of Defendant's workers' compensation medical providers, his back injury was deemed not to be a work related injury and his workers' compensation claim for the injury was denied by Traveler's Indemnity Company, Defendant's worker's compensation insurer.[2] After Plaintiff continued to have pain in his back, his personal physician issued work restrictions for him on May 3, 2016, and Plaintiff thereafter took a FMLA leave from work until July 10, 2016, when his personal physician released him to return to work and he returned to work. Although Plaintiff returned to work on the assembly line, he continued to experience some pain in his back and was permitted to work on "Engine Dress" while his back strengthened before he was returned to his assembly line job.

On September 7, 2016, Plaintiff injured his right shoulder while working at the Plant. Over the course of the next several months, he received treatment from Premise Health and was issued

---

[1] Plaintiff's original complaint lacked factual allegations, and the Court directed him to cure this deficiency. *See* Order entered February 21, 2018 (Docket Entry No. 4). His complaint was dismissed when he failed to comply with the Court's directive. *See* Order entered April 5, 2018 (Docket Entry No. 5). Upon his motion to re-open, the dismissal was vacated, *see* Order entered April 12, 2018 (Docket Entry No. 8), and he thereafter filed an amended complaint.
In addition to his ADA and state law retaliation claims, Plaintiff's amended complaint also set out a racial discrimination claim and a claim against two individually named defendants. Upon initial review under 28 U.S.C. § 1915(e)(2), the Court dismissed these claims for failure to state claims upon which relief can be granted. *See* Order entered May 21, 2018 (Docket Entry No. 10).

[2] Plaintiff subsequently appealed the denial of his workers' compensation claim and obtained a ruling on December 21, 2016, that his back injury was work related.

a series of temporary work restrictions.[3] During this time period, his work duties were modified to accommodate the work restrictions and he was placed in jobs that were different than his assembly line job and were consistent with the work restrictions. Plaintiff was eventually referred to an orthopedist, Dr. Renfro, who (1) diagnosed him with a right partial rotator cuff tear, (2) released him to return to work with restrictions, and (3) recommended surgery to repair his shoulder. Plaintiff stopped working at the Plant on December 21, 2016, due to his shoulder problem, and Dr. Renfro performed surgery on Plaintiff's shoulder on December 23, 2016. Dr. Renfro concluded that there was no evidence of a rotator cuff tear and issued a series of temporary work restrictions for Plaintiff over the next several months.

However, Plaintiff never returned to work at the Plant in any capacity and continued to suffer shoulder pain. On April 4, 2017, he underwent a functional capacity evaluation ("FCE"), by Star Physical Therapy, which recommended several work restrictions, including occasionally being able to lift a maximum of five pounds over his head, occasionally being able to lift a maximum of five pounds out from his body, occasionally being able to lift/carry 30-35 pounds, unilaterally carrying, lifting, and maneuvering 25 pounds, and occasionally reaching overhead with his right shoulder/upper extremity.[4] On April 10, 2017, Dr. Renfro met with Plaintiff for a follow-up of the FCE and determined that Plaintiff was at maximum medical improvement ("MMI"), deemed the restrictions in the FCE to be permanent, and released Plaintiff to return to work on April 11, 2017, with these restrictions.[5] Dr. Renfro subsequently completed an Attending Physician's Report ("APR") that allowed Plaintiff to return to work with the following permanent work restrictions: (1) occasional use of his injured right arm/hand; (2) occasional overhead activity with his right arm;

---

[3] *See* Docket Entry No. 23-2 at 10-15.

[4] *See* Docket Entry No. 23-1 at 210-219

[5] *See* Docket Entry No. 23-1 at 220 and No. 23-4.

(3) frequently lifting above the shoulder of no more than seven pounds; (4) occasionally push/pulling no more than 61 pounds; and (5) occasionally lifting/carrying no more than 35 pounds.[6]

Because of Plaintiff's permanent work restrictions, Plaintiff was deemed unable to perform the essential functions of his assembly line job, and Defendant did not permit him to return to that job.[7] During April and/or May 2017, Plaintiff suggested to Greg Persinger ("Persinger"), Defendant's Human Resources Manager, that there were two other jobs at the Plant that he could perform with his work restrictions - the car finishing line and driving cars to the parking lots.[8] However, Defendant did not place Plaintiff in any other job at the Plant. On May 4, 2017, Persinger e-mailed Plaintiff, stating:

> We have evaluated you for placement based on your restrictions, our discussion, and the essential functions of the jobs. Unfortunately, we have been unable to place you at this time. If your restrictions change or you have additional ideas regarding placement, please contact me. In the meantime, we will continue to search for open jobs that you can perform.
>
> You may remain on unpaid leave under Yates policy for the balance of 12 months from your first day of leave (1/4/2017). You are eligible to apply for unemployment benefits. In addition you can maintain your health insurance as long as you continue to pay your premiums. . . . Additionally, please contact me if you have any questions.

*See* Docket Entry No. 23-2. Plaintiff thereafter remained on an unpaid leave of absence from work.

After having another physician operate on his shoulder in August 2017, Plaintiff was eventually released in December 2017 to work without any work restrictions, and he contacted Persinger that month about returning to work. In response, Persinger notified Plaintiff that he needed to have a release for his back injury that noted any restrictions related to that injury. Plaintiff's physician for the back injury, Dr. Scott, issued an Attending Physician's Report on February 7, 2018, stating that Plaintiff had permanent work restrictions of no lifting or carrying more than 35 pounds, only occasional bending/stooping, and only occasional trunk rotation,

---

[6] *See* Docket Entry No. 23-2 at 16.

[7] *See* Docket Entry No. 23-1 at 222 and No. 23-2 at 17

[8] *See* Docket Entry No. 23-2 at 5-6, ¶ 13 and 23-1 at 130-133.

seated/standing.⁹  Persinger thereafter informed Plaintiff that Defendant could not find a job placement for him given these work restrictions and that his medical leave of absence would expire on April 19, 2018.  Defendant thereafter terminated Plaintiff's employment effective May 9, 2018.

## II. ADMINISTRATIVE PROCEEDINGS

On May 11, 2017, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), asserting disability discrimination because of Defendant's failure to place him in a job at the Plant when he sought to return to work in April 2017 after recovering from his shoulder surgery.¹⁰  Plaintiff alleges that Defendant failed to reasonably accommodate him by refusing to place him in alternative jobs at the Plant that he could perform with the work restrictions that were in place for his shoulder and, instead, told him that he could remain on a leave of absence.  On November 8, 2017, the EEOC closed the file on Plaintiff's charge without any determination and issued Plaintiff a right to sue letter.¹¹  The instant lawsuit was filed on February 2, 2018, within 90 days from the right to sue letter.

## III. MOTION FOR SUMMARY JUDGMENT AND RESPONSE

Defendant seeks summary judgment on both claims brought by Plaintiff.  In support of its motion, Defendant relies upon a supporting memorandum (Docket Entry No. 24), a statement of undisputed material facts (Docket Entry No. 25), excerpts from Plaintiff's deposition transcript and exhibits thereto (Docket Entry No. 23-1),the declaration of Persinger and exhibits thereto (Docket Entry No. 23-2), a copy of a letter from Travelers Insurance (Docket Entry No. 23-3), and 2 pages from Dr. Renfro's progress notes (Docket Entry No. 23-4).

---

⁹ *See* Docket Entry No. 23-2 at 7, ¶ 16.

¹⁰ *See* Docket Entry No. 23-1 at 221.

¹¹ *See* Docket Entry No. 1-1.

5

Defendant initially seeks to narrow the scope of the events at issue with respect to Plaintiff's ADA claim. Defendant argues that events occurring more than 300 days prior to the May 11, 2017 charge of discrimination are barred by the statute of limitations and that any claim based upon events occurring after the filing of the charge of discrimination, or after the EEOC investigation closed on November 8, 2017, at the latest, is a claim that has not been administratively exhausted. Defendant further argues that the ADA claim must fail because (1) Plaintiff, as a result of his permanent work restrictions, was not qualified for his job at the Plant because he could not perform the essential functions of his job with or without a reasonable accommodation, (2) Plaintiff's proposed accommodation of working other jobs at the Plant was not objectively reasonable, and, (3) Defendant reasonably accommodated Plaintiff by permitting him to take a year long leave of absence from work.

With respect to Plaintiff's state law retaliation claim, Defendant argues that: (1) Plaintiff cannot establish a *prima facie* case of retaliatory discharge for requesting workers' compensation benefits because he has no evidence that his claims for workers' compensation benefits were a substantial factor in Defendant's decision to terminate his employment; and, (2) even if Plaintiff could establish a *prima facie* case, he cannot show that Defendant's legitimate, non-retaliatory reason for terminating his employment was pretext for workers' compensation retaliation.

In response, Plaintiff submits a narrative statement in which he first asserts that Defendant has denied him materials that he needs to prove his case, such as his "Daily Job Log Sheets." *S*ee Plaintiff's Response (Docket Entry No. 29). He then takes issue with the accuracy of several statements in Persinger's declaration. *Id*. Plaintiff also argues that he had been permitted to return to work from his back injury in July 2016 and made no complaints about his back, yet Defendant relied upon restrictions related to his back injury when it refused to permit him to return to work in the spring of 2018. *Id*.

In reply, Defendant contends that: (1) the factual statements set out in its statement of undisputed material facts are deemed undisputed because Plaintiff failed to respond to the statement; (2) Plaintiff has abandoned his state law retaliatory discharge claim by failing to respond to

6

Defendant's arguments for summary judgment with respect to this claim; (3) Plaintiff fails to create a genuine issue of material fact regarding his ADA claim; and, (4) Plaintiff was not denied any discovery material. *See* Defendant's Reply (Docket Entry No. 30). In his sur-reply Plaintiff appears to contest Defendant's assertion that he has not responded to its statement of undisputed material facts and continues to argue that he has been denied documents that he needs to prove his case. *See* Docket Entry No. 31. He asserts that Defendant made his life at the Plant like "hell" by taking actions such as: giving him work assignments that were difficult given his restrictions; sending him to see his personal physician instead of a medical provider at the medical facility at the Plant; not "working with him;" and having a supervisor confront him and act hostile to him after his injury. *Id*. He also contends that there are people with restrictions who are working at the Plant. *Id*.

### IV. STANDARD OF REVIEW

A motion for summary judgment is reviewed under the standard that summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the Federal Rules of Civil Procedure. *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Pennington v. State Farm Mut. Automobile Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). The moving party has the initial burden of informing the court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Rodgers*, *supra*.

Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations but must present evidence supporting its claims or defenses. *See Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003); *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991). Plaintiff's *pro se*

7

status does not relieve him of this obligation, which is a threshold requirement for all non-moving parties when summary judgment is sought by an opposing party. *Sixty Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The Court cannot supply or assume facts supporting Plaintiff's case and is not required to make legal arguments on his behalf. *See Thompson v. A.J. Rose Mfg. Co.*, 208 F.3d 215, 2000 WL 302998 (6th Cir. 2000); *Bell v. Tennessee*, 2012 WL 996560, *9 (E.D. Tenn. March 22, 2012). *See also Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 406 (6th Cir. 1992) ("it seems to us utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion.").

In deciding a motion for summary judgment, the Court must review all the evidence, facts and inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd.*, 475 U.S. 574, 587 (1986); *Van Gorder v. Grand Trunk Western Railroad, Inc.*, 509 F.3d 265, 268 (6th Cir. 2007). The Court does not, however, weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson*, 477 U.S. at 249. The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id*. The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence on which the jury could reasonably find for the nonmoving party. *Rodgers*, 344 F.3d at 595.

## V. ANALYSIS AND CONCLUSIONS

A. Plaintiff's Assertion that Defendant Withheld Discovery

In both his response and sur-reply, Plaintiff alleges that Defendant "continues to deny" him "essential materials," "requested materials," unspecified records, and "Daily Job Log Sheets," and that Defendant "continue[s] to hide material from me and court." *See* Response at 1 and Sur-Reply at 1-2. Defendant denies withholding any discovery from Plaintiff and asserts that it provided to Plaintiff several dozen documents in response to an informal discovery request from Plaintiff in August 2018. *See* Reply at 5 and Docket Entry No. 30-3. Defendant asserts that the referenced

8

"daily job log sheets" belong to Nissan, not defendant, are purged by Nissan after one year, and were not available to be produced to Plaintiff. *See* Reply at 5 and Docket Entry No. 30-4. Plaintiff disputes that Nissan does not keep records for more than a year. *See* Plaintiff's Sur-reply at 1-2.

Plaintiff's contention about withheld discovery is liberally construed as an assertion under Rule 56(d) of the Federal Rules of Civil Procedure that he cannot present facts essential to justify his opposition to summary judgment. However, the Court finds Plaintiff's contention to be unpersuasive. Plaintiff has offered no specifics as to his general and vague allegation that Defendant has not provided him with "essential materials," "requested materials," and "records." With respect to the "daily job log sheets," Defendant has offered an explanation for why these specific sheets were not available to be produced. Although Plaintiff contends that Defendant's explanation is not believable because other records are kept by Nissan for longer than a year, he has not offered any specific evidence that shows that Defendant's explanation concerning the "daily job log sheets" is factually incorrect.

Finally, to the extent that Plaintiff believes that Defendant did not properly produce documents to him, he did not file a motion to compel the production of these documents. In accordance with the deadlines set out in the scheduling order (Docket Entry No. 17), Plaintiff had until October 12, 2018, to file a motion to compel the production of discovery from Defendant. However, no such motion was filed. The Court finds no basis for requiring that Plaintiff be provided with any additional time for discovery or with any other relief under Rule 56(d) of the Federal Rules of Civil Procedure that would relieve him from responding to the pending motions for summary judgment

B. Exhaustion of Plaintiff's ADA Claim

A plaintiff suing under the federal anti-discrimination laws must exhaust available administrative remedies by filing an EEOC charge of discrimination before bringing a lawsuit in federal court. *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir. 2000). Claims not included in a charge of discrimination may not be brought in a subsequently filed lawsuit. *Russ*

*v. Memphis Light Gas & Water Div.*, 720 Fed.App'x 229, 236 (6th Cir. 2017); *Johnson v. Cleveland City School Dist.*, 344 Fed.App'x. 104, 109 (6th Cir. 2009). Although Plaintiff's *pro se* status requires the Court to liberally construe his pleadings and to generally provide him with some leeway in the presentation of his case, this leeway does not permit the Court to ignore the applicable law. Several of the events that Plaintiff complains about and upon which he relies on as the basis for his ADA claim are events that cannot be considered by the Court because they were not presented to the EEOC through a charge of discrimination and, thus, have not met the exhaustion requirement.

The only charge of discrimination filed by Plaintiff is the charge that he filed on May 11, 2017. This charge identified as discriminatory acts the events occurring in April 2017 that surrounded his initial attempt to return to work from his shoulder surgery. Because Plaintiff had certain work restrictions related to the shoulder injury, Defendant placed Plaintiff on an unpaid leave of absence instead of a job placement in a different job at the Plant. *See* Docket Entry No. 23-1. These events and Defendant's decision about Plaintiff's attempt to return to work in April 2017 were included in his charge of discrimination, and a claim based upon these events is properly before the Court as an administratively exhausted claim.

However, as set out in his pleadings and as argued in his response to the motion for summary judgment, Plaintiff also complains about events that occurred between December 2017 - May 2018 when he made a second attempt to return to work at the Plant and when Defendant ultimately decided not to place him in a job at the Plant, essentially ending Plaintiff's employment with Defendant. The problem for Plaintiff is that he neither amended his charge of discrimination nor filed a new charge of discrimination that identified and charged that these events were discriminatory acts. Plaintiff's failure to bring these events before the EEOC through an amended charge or a new charge of discrimination renders them unexhausted and prevents them from being considered by the Court as supporting his ADA claim.

In some instances, uncharged conduct and claims may be appropriately considered by the Court if the claims are "reasonably related to or grow out of" the factual allegations that are set out in the actual EEOC charge. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 362 (6th Cir. 2010).

"Where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998).

The expansive construction of an EEOC charge, however, does not benefit Plaintiff here. The events of April 2017 and those of the December 2017-May 2018 time period are factually distinct events and are separated by several months. Those two factors weigh in favor of concluding that the latter events have not been exhausted as claims. *See Boyd v. Rich Prod. Corp.*, 2011 WL 3585966 at *5 (W.D.Tenn. Aug. 16, 2011) ("As such, the Court holds that Plaintiff's termination and the alleged failure to accommodate, in this case occurring more than eight months apart, are discrete acts of discrimination, each of which must be exhausted administratively. Plaintiff never amended her initial charge or filed a separate charge setting out the facts about her termination.").

Additionally, and more significantly, Plaintiff was issued a right to sue letter and the EEOC closed its investigation of his case on November 8, 2017, prior to the events that occurred between December 2017 and May 2018 about which he complains. These events, which were not included in any charge of discrimination, simply cannot be viewed as conduct that might reasonably fall within the scope of the EEOC's investigation of the May 11, 2017 charge when the investigation and the EEOC case was concluded and closed prior to these events even occurring. *See Reddy v. JP Morgan Chase Bank, N.A.*, 2012 WL 3686287 at *4 (S.D.Ohio Aug. 27, 2012) (claim for alleged discriminatory termination that was not included in a charge of discrimination and that occurred after plaintiff received a right-to-sue letter for other discrimination claims was not exhausted by virtue of the prior charge on the other claims).

Defendant also contends that events occurring more than 300 days prior to the filing of the May 11, 2017, charge of discrimination are excluded from consideration by the Court because they are barred by the applicable statute of limitations. While Defendant is correct in its assertion that claims based upon events occurring more than 300 days prior to the filing of a charge of discrimination are generally subject to dismissal as untimely, *Jones v. Nat. Essentials, Inc.*, 740 Fed.App'x 489, 493 (6th Cir. 2018), Plaintiff's ADA claim is not based upon events occurring more

11

than 300 days prior to the filing of his charge of discrimination. Thus, Defendant's argument on this issue fails to provide a basis for summary judgment in its favor.

B. Merits of ADA Claim

Given the preceding analysis of Plaintiff's failure to exhaust certain events, his ADA claim is limited to the events surrounding his attempt to return to work in April 2017 and whether Defendant's actions at that time violated the ADA. After review of the evidence before the Court, the Court finds that Defendant did not violate the ADA.

Title I of the ADA prohibits covered employers from discriminating against a "qualified individual on the basis of disability" with regard to hiring, advancement, training, termination, and "other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "Discrimination" includes a refusal to make "reasonable accommodations" for the employee's disability. *Kleiber v. Honda of America Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007) (citing 42 U.S.C. § 12112(b)(5)(A)); *see also Smith v. Ameritech*, 129 F.3d 857, 866 (6th Cir. 1997). The ADA defines a "reasonable accommodation" to include:

> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
>
> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

Id. § 12111(9). To advance a failure to accommodate claim under the ADA, an employee must show that he requested a reasonable accommodation and that the employer failed to provide the necessary accommodation. *Myers v. Cuyahoga Cnty*, 182 Fed.App'x. 510, 515 (6th Cir. 2006). The ADA plaintiff bears the burden of presenting evidence that he requested an accommodation is reasonable. *Kleiber*, 485 F.3d at 870; *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1183 (6th Cir. 1996) ("the disabled individual bears the initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable.").

Plaintiff bases his ADA claim upon Defendant's failure to offer him a reasonable accommodation by not transferring him to another job at the Plant that he believes he could have performed with his work restrictions. Defendant challenges Plaintiff's ability to show that he is both "a qualified individual" under the ADA and that it failed to offer him a reasonable accommodation.

The Court need not consider the qualified individual factor because there is no evidence before the Court upon which a reasonable jury could conclude that Defendant refused to make a reasonable accommodation for Plaintiff's injury when he sought to return to work in April 2017. At the time, Plaintiff had recently undergone a FCE and had permanent work restrictions in place that did not permit him to perform the essential functions of the assembly line job that he had been working prior to his shoulder injury. *See* Persinger Declaration at ¶ 12. Plaintiff has not disputed this fact, and he testified at his deposition that he could not perform his prior job in May 2017 with the permanent work restrictions that were in place. *See* Docket Entry No. 23-1 at 134-35.

Instead, he argues that he could have been placed in the jobs of "car finishing line" or "driving car to lot," the two jobs that he specifically mentioned in his EEOC charge.[12] Reassignment may be required as a reasonable accommodation when an employee can no longer perform the functions of his job. *See Burns v. Coca-Cola Enters., Inc.*, 222 F.3d 247, 257 (6th Cir. 2000). If an ADA plaintiff's requested accommodation is a transfer to a different position, "employers have a duty to locate [a] suitable position [ ]...." *Kleiber*, 485 F.3d at 870. "Nonetheless, to overcome summary judgment, the plaintiff generally must identify the specific job he seeks and demonstrate that he is qualified for that position." *Id*.

One aspect of the reasonableness of a requested reassignment is whether the requested reassignment is to an open or vacant position. Employers are only required to reassign a disabled employee to a vacant position. *Hedrick v. W. Reserve Care Sys. & Forum Health*, 355 F.3d 444, 457

---

[12] In his response, Plaintiff refers to an e-mail from Persinger to him on March 2, 2017, about potential jobs that Plaintiff could do at the Plant and to a response he made to Persinger about "4 jobs namely Fascia, Engine dress, PQA, Tire installation." *See* Response (Docket Entry No. 29) at 1. However, Plaintiff fails to offer either the referenced e-mail or his response, and evidence from Defendant attached to its reply suggests that this interaction actually occurred in 2018 and that Plaintiff incorrectly stated the year as 2017. *See* Docket Entry No. 30 at 3, No. 30-1, and 30-2 at ¶4.

(6th Cir. 2004); *Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 634 (6th Cir. 1998); *Burns*, 22 F.3d at 257; *Monette*, 90 F.3d at 1187; *Adams v. TRW Auto. US. LLC*, 2005 WL 1862302 at *16 (M.D.Tenn. July 22, 2005). However, Plaintiff testified at his deposition that he did not know if there were any openings for these two jobs at the time. *See* Docket Entry No. 23-1 at 131 and 133. Further, Defendant has presented evidence that there were no such openings at the time, *see* Persinger Declaration at ¶ 13, and Plaintiff has not submitted any specific evidence rebutting this contention.

An ADA plaintiff must also show that he was "qualified" for the position to which he requested reassignment. *See Burns*, 222 F.3d at 257-58. Defendant has explained that, even if a vacancy existed at the time for these two jobs, it could not place Plaintiff in the jobs because the jobs were primarily reserved for Nissan employees based on seniority or for employees of Defendant who had temporary, not permanent, restrictions. *See* Persinger Affidavit at 5-6, ¶ 13. Plaintiff has offered no evidence that rebuts Defendant's contention that the two jobs at issue were restricted to Nissan employees or to Defendant's employees who had only temporary restrictions.

Plaintiff alleges in his sur-reply that "people with restrictions . . . are working at the plant, there." *See* Docket Entry No. 31 at 2. However, he offers no actual evidence supporting this conclusory assertion and no evidence that shows that any employee of Defendant with a permanent restriction had ever been placed in the two jobs at issue. Such a vague and general allegation does not support opposition to a motion for summary judgment. *See Steward v. New Chrysler*, 415 Fed.App'x 632, 643 (6th Cir. 2011) ("[Plaintiff] mentions a number of other employees whom she alleges Chrysler accommodated, but the bare fact that other employees were accommodated does not satisfy her evidentiary burden of pointing to a specific vacant position for which she was qualified, which she actually requested, and which was not provided to her."). Additionally, an employer is not required to reassign a permanently disabled employee to a temporary position for recuperating employees or to a rotating-type position. *Thompson v. E.I. DuPont deNemours & Co.*, 70 Fed.App'x 332, 337 (6th Cir. 2003).

Plaintiff's lack of evidence of vacant positions for which he was qualified and to which he requested a reassignment requires granting summary judgment in favor of Defendant on Plaintiff's reasonable accommodation claim. *See Kleiber*, 485 F.3d at 869-70; *Steward*, *supra*; *Adams*, 2005 WL 1862302 at *17. No reasonable jury could find in favor of Plaintiff based on the evidence that is before the Court.

Furthermore, the undisputed evidence showed that Defendant permitted Plaintiff to continue on a 12-month leave of absence when he could not be placed in a job in April/May 2017. A medical leave of absence for an injured employee has been found to be a reasonable accommodation under appropriate circumstances. *See Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 783 (6th Cir. 1998); *Bolden v. Lowes Home Centers*, 2018 WL 4181614 at *6 (M.D.Tenn. Aug. 31, 2018) (Campbell, J.). In the instant case, providing Plaintiff with a continued leave of absence, which held his assembly line job open while he healed from his shoulder injury, was a reasonable accommodation by Defendant.

Although Plaintiff does not raise the issue of whether Defendant engaged in a good faith interactive process regarding a reasonable accommodation in April/May 2017, Plaintiff's failure to show evidence that he proposed a reasonable accommodation negates this issue as an independent claim. *Rorrer v. City of Stow*, 743 F.3d 1025, 1041 (6th Cir. 2014). Regardless, the undisputed evidence before the Court shows that Defendant engaged with Plaintiff about his situation and took numerous steps to evaluate his disability and restrictions, his ability to perform his old job, the availability of alternative jobs, and the option of a leave of absence. No reasonable jury could find that Defendant failed to make a good faith effort to engage in the interactive process. *See Zaffino v. Metro. Gov't of Nashville & Davidson Cty.*, 2016 WL 5724187 at *9 (M.D.Tenn. Sept. 30, 2016) (Campbell, J.).

C.  Retaliatory Discharge Claim

Plaintiff's pleadings were construed to assert a state law claim that he was terminated from his employment in retaliation for having filed a workers' compensation claim. *See* Docket Entry

No. 10 at 2. Tennessee recognizes a cause of action for retaliatory discharge following an employee's claim for workers' compensation. *Yardley v. Hosp. Housekeeping Sys., LLC*, 470 S.W.3d 800, 804 (Tenn. 2015); *Clanton v. Cain–Sloan Co.*, 677 S.W.2d 441, 444-45 (Tenn. 1984). In order to make out a *prima facie* case for retaliatory discharge, Plaintiff must prove that (1) he was an employee of Defendant at the time of the injury, (2) he made a claim against Defendant for workers' compensation benefits, (3) Defendant terminated his employment, and (4) the claims for workers' compensation benefits were a "substantial factor" in Defendant's motivation to terminate his employment; *Yardley*, 470 S.W.3d at 805; *Anderson v. Standard Register Co.*, 857 S.W.2d 555, 558 (Tenn. 1993).

Defendant does not contest that Plaintiff satisfies the first three elements of this claim. *See* Defendant's Memorandum in Support at 16.[13] However, as argued by Defendant, Plaintiff fails to set forth evidence that shows that his workers' compensation claims were a substantial factor in his termination. To prove that his claims for workers' compensation benefits were a substantial factor in the decision to terminate his employment, Plaintiff may rely either on (1) direct evidence supporting his claim or (2) circumstantial evidence. *Thomason v. Better-Bilt Aluminum Prods., Inc.*, 831 S.W.2d 291, 293 (Tenn. Ct. App. 1992) (citations omitted). Direct evidence would be evidence that Defendant admitted that the reason for his termination was his benefit claims or evidence of an established policy of Defendant that linked his termination to his benefit claims. There is no such evidence before the Court. Thus, Plaintiff must set forth circumstantial evidence that can reasonably be construed as showing that his benefit claims were a substantial factor in Defendant's decision to terminate his employment. In accordance with Tennessee law, Plaintiff's circumstantial evidence must be "compelling." *Thomason*, 831 S.W.2d at 293; *Cooper v. Wyndham Vacation Resorts, Inc.*, 570 F. Supp. 2d 981, 985 (M.D.Tenn. 2008).

---

[13] In its reply, Defendant argues that Plaintiff abandoned his retaliatory discharge claim by failing to address it in his response. *See* Defendant's Reply at 1-2. Given Plaintiff's *pro se* status and the fact that his sur-reply directly addresses the claim, the Court declines to adopt Defendant's abandonment argument.

16

Even with the benefit of the leeway that is afforded to *pro se* litigants, Plaintiff's evidence in favor of his retaliatory discharge claim fails to raise a genuine issue of material fact as to the substantial factor element of his claim. As noted by Defendant, Plaintiff testified in his deposition that he believed that he was retaliated against because (1) Premise Health initially determined that his back injury was not work related and (2) Dr. Renfro submitted "false reports" to Defendant concerning Plaintiff's shoulder injury. *See* Defendants Memorandum of Law at 18. Even taken in the light most favorable to Plaintiff, neither of these "facts," even if taken as true, shows the existence of a retaliatory motive on the part of Defendant regarding his termination. Indeed, while this evidence may be relevant to how his injury was treated and his actual workers' compensation claim, it escapes the Court as to how this evidence even has any relevance to the termination decision.

In his response and sur-reply, Plaintiff also appears to argue that proof of his retaliation claim exists because one of his supervisors, Shiela Geesling, engaged in "hostile treatment" towards him after Geesling found out that Plaintiff "got to know that I have [filed] for Workers Comp to have Yates Services LLC decision about my injury change." *See* Sur-Reply at 2. He asserts that Geesling confronted him and stated that "I can't work at the place there with outside restrictions (restrictions from personal doctor)," and that he had to go to a manager in order to get her to stop being hostile to him. *Id*. at 3. He also contends that his work at Defendant became "like hell" after his injuries and that he was placed on several "vantage points" and "vantage rotations," which the Court presumes are different work duties, in an effort to make him quit his job and "walk away." *Id.* at 1-2.

Even when viewed in the light most favorable to Plaintiff, this evidence does not meet the compelling evidence threshold necessary for his claim. While the expression of a negative attitude by the employer toward an employee's injury can in some circumstances provide the type of circumstantial evidence that might satisfy the substantial factor element, *see Newcomb v. Kohler Co.*, 222 S.W.3d 368, 391 (Tenn. Ct. App. 2006), Defendant has provided undisputed evidence that Plaintiff was under Geesling's supervision from only January 2016 to April 2016, and thus did not supervise him for nearly two years prior to his termination. Further, however poorly Plaintiff may

17

have been treated while being supervised by Geesling, there is no evidence of any connection between her supervision of Plaintiff or any events that occurred while he was being supervised by her and the decision to terminate him.

The factual basis for Plaintiff's complaint about "vantage points" or "vantage rotation" is unclear to the Court. However, it appears that what Plaintiff is complaining about is that he was given altered or modified work duties during the period when he was recovering from his shoulder injury and had work restrictions but that these duties required him to perform repetitive work instead of being rotated through different work duties and he believes that this repetitive work actually hindered his recovery and caused him further injury. *See* Plaintiff's Sur-reply at 2. Even if taken as true for the purposes of determining the motion for summary judgment, such evidence fails to amount to the type of compelling evidence required for Plaintiff's claim. It was not unreasonable for Defendant to temporarily restrict or alter Plaintiff's work duties in order to comply with his work restrictions. Indeed, such an action is a type of reasonable accommodation from Defendant. Further, Plaintiff has offered absolutely no evidence which would infer that limiting him to certain work duties was a scheme of some type whose goal was to get him to quit his job.

Plaintiff's subjective belief and his speculation that a retaliatory motive existed behind his termination is not evidence that supports his claim. *See Newcomb*, 222 S.W.3d at 391. In the end, he has not supported his retaliatory discharge claim with sufficient evidence to meet his *prima facie* case. No reasonable jury could find in his favor on this claim based on the evidence that is before the Court. Accordingly, Defendant is entitled to summary judgment on the claim.

## RECOMMENDATION

Based on the forgoing, the undersigned respectfully RECOMMENDS that the motion for summary judgment filed by Defendant Yates Services, LLC (Docket Entry No. 23), be GRANTED and that this lawsuit be DISMISSED WITH PREJUDICE.

ANY OBJECTIONS to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific

portions of this Report and Recommendation to which objection is made. *See* Rule 72(b)(2) of the Federal Rules of Civil Procedure and Local Rule 72.02(a). Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Any response to the objections must be filed within fourteen (14) days after service of objections. *See* Federal Rule 72(b)(2) and Local Rule 72.02(b).

    Respectfully submitted,

    BARBARA D. HOLMES
    United States Magistrate Judge